NO. 16-4035

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

JOHN LEGRAND,
**Appellant,**

v.

UNITED STATES OF AMERICA,
**Appellee,**

APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
CIVIL ACTION NO. 3:12-CV-0743

REPLY BRIEF OF APPELLANT, JOHN LEGRAND

> Stephen M. Greecher, Jr., Esquire
> Kevin L. Hall, Esquire
> **TUCKER ARENSBERG, P.C.**
> 2 Lemoyne Dr., Ste. 200
> Lemoyne, PA 17043
> Telephone:  (717) 234-4121
> Facsimile:  (717) 232-6802
> sgreecher@tuckerlaw.com
> khall@tuckerlaw.com
> *Attorneys for Appellant*

# **TABLE OF CONTENTS**

I. REPLY ARGUMENT                                                                        1

    A.  Mr. Legrand was entitled to damages for emotional distress
          since the emotional distress suffered by Mr. Legrand was              1
          the result of a physical injury caused by the United States

    B.  The pain and suffering, embarrassment and humiliation and
          loss of the enjoyment of life of Mr. Legrand is                       8
          distinguishable from any of the other inmates during the
          salmonella outbreak

II. CONCLUSION                                                                          11

# TABLE OF AUTHORITIES

**Cases**                                                                **Pages**

*Botek v. Mine Safety Appliance Corp.*, 531 Pa. 160, 611 A.2d 1174
 (Pa. 1992) ....................................................................................    7

*Brinson v. United States*, 2015 WL 3883582 ...............................    4, 8, 9

*Lubowitz v. Albert Einstein Med. Ctr.*, N. Div., 424 Pa. Super. 468, 623
A.2d 3 (Pa. Super. 1993) .............................................................    6, 7

*McManamon v. Washko*, 2006 Pa. Super. 245, 906 A.2d 1259
 (Pa. Super. 2006) .......................................................................    9

*Murphy v. Abbott Lab.*, 930 F. Supp. 1083 (E.D. Pa. 1996) ...............    6, 7, 8

*Pryer v. C.O. 3 Slavic*, 251 F.3d 448 (3d Cir. 2001) .......................    10

*Rhines v. United States*, Civ. No. 3:12-CV-1601 ...........................    9

*Toeny v. Chester County Hosp.*, 961 A.2d 192 (Pa. Super. 2008) .........    6

*Williams v. Martin Marietta Alumina, Inc.*, 817 F.2d 1030 (3d Cir.
1987) ......................................................................................    9

# I.    REPLY ARGUMENT

### A.    MR. LEGRAND WAS ENTITLED TO DAMAGES FOR EMOTIONAL DISTRESS SINCE THE EMOTIONAL DISTRESS SUFFERED BY MR. LEGRAND WAS THE RESULT OF A PHYSICAL INJURY CAUSED BY THE UNITED STATES.

Mr. Legrand is entitled to recover for damages for emotional distress since the emotional distress was the result of a physical impact that was caused by the United States.

The United States admitted liability at the trial below. (A20). It was admitted that on June 25, 2011, the United States served tainted chicken fajitas to Mr. Legrand. (A21-2, 36-37). The United States admitted that the tainted chicken caused Mr. Legrand to suffer from salmonella poisoning. (A21-22). The salmonella poisoning caused Mr. Legrand to become sick the morning after the salmonella was congested. (A27). Mr. Legrand's symptoms were worse when compared with other individuals who ingested the salmonella poisoning. (A32). Mr. Legrand was immediately symptomatic as a result of the poisoning, which symptoms included impact to his nerves. (A37-38).   During the evening, Mr. Legrand soiled himself and began vomiting, experienced headaches and felt cold and shaky, with rattling of teeth. (A38-39). Mr. Legrand sought help, but despite doing so, he received no medical assistance that evening. (A38).

HBGDB:166548-1 030512-169771

Mr. Legrand's cell mate also exhibited symptoms of salmonella poisoning. (A40). This resulted in the two cell mates having to argue over the use of the toilet and alternating back and forth between vomiting and sitting on the toilet. (A40). The next day, a woman came to Mr. Legrand's cell inquiring into his symptoms. She told Mr. Legrand that she wasn't allowed to provide any information to him after he inquired into the outbreak. (A40). Mr. Legrand was scared and frightened because he did not know what was taking place. (A40, 42). Mr. Legrand was "scared" for his life. (A42).

Mr. Legrand's unit was placed on lockdown for a period of two to three weeks. (A28). During this time, Mr. Legrand ran out of toilet paper and was forced to use his shirt and bed sheets to clean himself. (A43). Mr. Legrand was also forced to use toothpaste for a cleaning product when he ran out of soap and it was not replaced. (A43). He was not permitted to shower during the period of the lockdown (A. 44). Mr. Legrand was not provided with new sheets or toilet paper until the lockdown was lifted (A.44). During the lockdown, Mr. Legrand was stressed and embarrassed due to defecating on himself. (A45). Mr. Legrand continued to request medical help during this time period, but was told that the medical staff was on the other side of the facility. (A45).

Over a week after ingestion of the salmonella poisoning, Mr. Legrand continued to experience symptoms of salmonella poisoning, including diarrhea,

2

vomiting, headaches and pain in his eye. (A47). The pain in his right eye was so acute that he felt as though his eye would be ejected from his head. Mr. Legrand's diarrhea during this time period was so severe that his intestines began to come out of his body. (A47). He was told to take toilet paper, wrap it around his finger, and push his intestines back into his body. (A49). Mr. Legrand was told that this symptom was the result of his constant diarrhea from the salmonella poisoning. (A. 49). All of the symptoms Mr. Legrand was experiencing at this time began after consuming the salmonella poison. (A48).

After the period of lock down, Mr. Legrand had trouble coping with the resulting salmonella poisoning and appeared to others to be in stroke-like state, and was depressed. (A28-30). The treating physician testified that this malaise was consistent with salmonella poisoning. (A92). Mr. Legrand continued to exhibit abdominal symptoms and was scheduled at one point to undergo an EGD test to rule out damage to his abdominal lining as a result of the salmonella poisoning. (A61). Mr. Legrand was scheduled to undergo an EGD test, but it was postponed by the United States as were subsequently scheduled EGD tests. (A62). During the time period in which the EGD test was postponed, Mr. Legrand experienced feelings of fear and that the facility was hiding something from him. (A62). Mr. Legrand experienced these concerns as well as concerns regarding permanent damage from the salmonella poisoning through the end of 2014, over three years

3

after the salmonella poisoning took place. (A66). During this time period, Mr. Legrand continued to request that the EGD test be performed to rule out permanent damage from the salmonella poisoning. (A65-66).

Not until June 16, 2016 did Mr. Legrand undergo an EGD, at which time his mind was finally put at ease relating to the potential for permanent damage to his abdominal lining due to the salmonella poisoning. (A70). After waiting years for appropriate testing to be completed, Mr. Legrand learned that his symptoms were related to a hiatal hernia, and not the result of the salmonella poisoning. (A65-66.)

However, Mr. Legrand's concerns regarding the significant dangers that could have resulted from salmonella poisoning were not unreasonable. (A81). For instance, the United States cites to *Brinson v. United States,* 2015 WL 3883582 Civil Action No. 3:12-CV-1451. In *Brinson,* Dr. Holloway, the same physician who testified on behalf of the United States in the instant matter, recognized the similarity of symptoms between salmonella and the underlying diagnosis given to Mr. Legrand. ("Dr. Holloway further testified that GERD has symptoms similar to salmonella, with the exception of diarrhea."). *Id.* at *2.

Mr. Legrand is entitled to recover damages for emotional distress. Mr. Legrand contends that he is entitled to damages because of the reasonable and foreseeable emotional distress he endured arising out of his ongoing abdominal symptoms that he reasonably believed were the result of the salmonella poisoning

4

from which he suffered. The reasonable emotional distress and anguish Mr. Legrand suffered was the direct and proximate result of the negligence of the United States. The trial Court found that the negligence of the United States caused Mr. Legrand to suffer salmonella poisoning. (A4.) This was also admitted by the United States. (A21-22). Mr. Legrand continued to suffer symptoms he believed were related to salmonella poisoning after the initial physical impact. It was for this reason that he was initially scheduled to undergo an EGD test to rule out any permanent harm from the salmonella poisoning. (A61). At trial, Mr. Legrand presented un-contradicted testimony that it was the salmonella poisoning that gave rise to the emotional distress during the period in which he was not permitted to undergo an EGD test. (A15, 62-66).

The United States argues that since it was ultimately determined that the symptoms Mr. Legrand suffered were not a result of the salmonella poisoning, Mr. Legrand is not entitled to damages for the emotional distress he suffered. While the United States argues that it did not cause the underlying disease from of which the symptoms were ultimately determined to be a result, this outcome is irrelevant to the analysis that should have been undertaken by the trial court.

If the claims made by Mr. Legrand for emotional distress were merely the result of his subjective fear that he had been poisoned by salmonella, without further evidence of the physical impact of the underlying disease, then the attempt

5

by the United States to place this case in line with *Lubowitz v. Albert Einstein Med. Ctr., N. Div.,* 424 Pa. Super. 468, 623 A.2d 3 (Pa. Super. 1993), and its like, would be understandable.

However, in the instant case, as distinguishable from the facts in *Lubowitz,* the United States *admitted* that it caused the salmonella poisoning, the physical impact. (A21-22). Therefore, it is evident that Mr. Legrand was subjected to a physical impact, sufficient to establish a claim for emotional distress. *See Toeny v. Chester County Hosp.,* 961 A.2d 192 (Pa. Super 2008). A doctor for the United States then advised Mr. Legrand that he should undergo an EGD test because of the potential for permanent damage as a result of the salmonella poisoning. (A61). Mr. Legrand's emotional distress arose from the worry that he suffered permanent damage from the original physical impact, the salmonella poisoning, acknowledged to have been caused by the United States. (A21-22, 62).

The United States does not attempt to address the facts or ruling in *Murphy v. Abbott Lab.,* 930 F. Supp. 1083 (E.D. Pa. 1996), in which the trial court permitted recovery for fear of the underlying disease when the only physical impact was a needle-prick. The trial court in *Murphy v. Abbott Lab.* permitted the plaintiff to proceed, even when the underlying disease that caused the emotional distress was not contracted. In that case, the trial court quoted the Pennsylvania Supreme Court:

It is simple black letter law that a tortfeasor must take its victim as it finds him. Plaintiff-Appellant suffered, objective, measurable, observable physical injures here (although they were relatively mild). All of the consequent psychological and emotional pain and suffering is compensable in that situation, and our law has long so held under the so-called 'impact rule.'

*Id.(citing Botek v. Mine Safety Appliance Corp.,* 531 Pa 160, 611 A.2d 1174 (Pa. 1992)). The court in *Murphy v. Abbott Lab.* Also clearly distinguished *Lubowitz,* "Because Mrs. Lubowitz did not suffer physical injury arising from the defendant's allegedly negligent conduct, the facts of Lubowitz are distinguishable." *Id.,* 930 F. Supp. at 1087.

Similarly, in the present case, Mr. Legrand suffered observable physical injuries. (A. 21-22). From the facts as determined by the trial Court, those physical injuries were in no way mild. (A5-6). Mr. Legrand continued to suffer abdominal symptoms, of which he had been advised could be permanent damage resulting from the physical injury, the salmonella poisoning. (A61-62).

The United States incorrectly contends that these abdominal pains, including bloating, arose prior to the salmonella poisoning. (Appellee Brf. at 12). However, the record reflects that Mr. Legrand's testimony that these symptoms arose after the salmonella poisoning is in line with the contemporaneous records. (A48). Mr. Legrand testified that the bloating symptoms began after consuming the salmonella poisoning. (A48). The salmonella poisoning took place on June 25, 2011. (A21-2, 36-37). Medical records from July 2011 indicate that Mr. Legrand told medical

7

staff the symptoms had been ongoing for a few weeks. (A88). Then in August 2011, Mr. Legrand told medical staff that the symptoms had then continued for a few months. (A88). Contrary to the claim by the United States that this is some version of alternate facts, Mr. Legrand's continued complaints of bloating and other abdominal pains were completely consistent. In July 2011, a few weeks had passed since the salmonella poisoning took place. In August 2011, it had been a few months. This is not an alternative version of events.

For over four years, Mr. Legrand suffered emotional distress from these abdominal symptoms, which continued through this time period, in the form of fear that he had been permanently injured as a result of the salmonella poisoning. Therefore, following the reasoning in *Murphy v. Abbott Lab.*, the trial Court in this case should have awarded damages for "[a]ll of the consequent psychological and emotional pain and suffering" of Mr. Legrand as a result of the physical injury. *See, Id.*

**B.    The pain and suffering, embarrassment and humiliation and loss of the enjoyment of life of Mr. Legrand is distinguishable from any of the other inmates during the salmonella outbreak.**

In Pennsylvania, there are four elements may comprise a damage award for noneconomic loss: (1) pain and suffering (physical pain, mental anguish, discomfort, inconvenience and distress); (2) embarrassment and humiliation; (3)

8

loss of ability to enjoy the pleasures of life; (4) disfigurement. *McManamon v. Washko,* 2006 Pa. Super. 245, 906 A.2d 1259, 1281 (Pa. Super. 2006).

The trial Court awarded $2,500.00 for the salmonella poisoning suffered by Mr. Legrand due to the negligence of the United States. In light of the facts and circumstances of the salmonella outbreak as they relate to Mr. Legrand, this award should shock the conscience of this appellate Court and appear as grossly inadequate. *See Williams v. Martin Marietta Alumina, Inc.,* 817 F.2d 1030 (3d Cir. 1987).

The United States contends that Mr. Legrand's suffering as a result of salmonella poisoning is similar to that of two other individuals. (Appellee Brf. At. 16). However, a review of the cases cited by the United States shows them to be distinguishable from the facts in the instant matter.

In *Brinson,* the trial judge utilized a formulaic application of $50.00 per day for each day in which the evidence showed the plaintiff exhibited minor symptoms. Notably, medical records in *Brinson* revealed that the plaintiff's symptoms had resolved within a week. *Brinson, supra* at *1. Contrasted with the instant matter, trial court made no relevant findings as to the inhumane conditions Mr. Legrand was required to endure.

The United States also cites to *Rhines v. United States,* Civ. No. 3:12-CV-1601. However, the damages in both *Rhines* and *Brinson* were limited due to the

9

time period for which the respective plaintiffs suffered physical harm. However, in the instant matter, Mr. Legrand suffered emotional distress for years following the salmonella poisoning. Thus the damage awards in those cases is not comparable to the damages suffered by Mr. Legrand in this case.

Rather, in the instant matter, Mr. Legrand testified, and the trial court found as a fact, that Mr. Legrand immediately began to suffer symptoms of salmonella poisoning. (A4-9). Such symptoms included vomiting, diarrhea, abdominal cramps, bloating, chills, aches, eye irritation and involuntary defecation in front of a cell mate. (A5). The trial court also found that during a full lockdown of USP Canaan following the salmonella outbreak, Mr. Legrand ran out of toilet paper and resorted to using and re-using bed sheets. During this lockdown, Mr. Legrand was also denied the opportunity to bathe himself. (A5-6).

Given these additional facts, and the fact that Mr. Legrand suffered emotional distress for years following these events, the award of $2,500.00 was nominal in nature and wholly inadequate. Therefore, it is proper for this matter to be remanded to the District Court for reconsideration of the verdict and damage award. *See Pryer v. C.O. 3 Slavic*, 251 F.3d 448 (3d Cir. 2001).

Therefore, the damage award of the District Court should be vacated and the case remanded for reconsideration of the damage award.

HBGDB:166548-1 030512-169771

## VIII. <u>CONCLUSION</u>

Appellant respectfully requests that this Court reverse and remand the District Court's September 6, 2016 Order for the purpose of determining damages resulting from emotional distress sustained by Mr. Legrand and reconsidering the damages awarded Mr. Legrand following a finding that they are wholly inadequate.

**TUCKER ARENSBERG, P.C.**

Dated: June 12, 2017      By *s/ Stephen M. Greecher, Jr.*
Stephen M. Greecher, Jr., I.D. #36803
Kevin L. Hall, I.D. #311826
2 Lemoyne Dr., Ste. 200
Lemoyne, PA 17043
Telephone: (717) 234-4121
Facsimile: (717) 232-6802
sgreecher@tuckerlaw.com
khall@tuckerlaw.com
*Attorneys for Appellant*

11

## CERTIFICATE OF COMPLIANCE
## WITH FED. R. APP. P. 32 AND 3D CIR. LAR 32.1(c)

Kevin L. Hall, Esquire certifies as follows:

1. This Reply Brief complies with the page limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 2,430 words, excluding the parts of the Reply Brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This Reply Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Reply Brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

3. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

/s/ Kevin L. Hall
Kevin L. Hall, Esquire

Dated:  June 12, 2017

HBGDB:166548-1 030512-169771

## CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS

Kevin L. Hall certifies as follows:

1. The text of the electronic and hard copy forms of this Reply Brief are identical.

2. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.


Dated:  June 12, 2017

/s/ Kevin L. Hall
Kevin L. Hall, Esquire

13

## <u>CERTIFICATE OF VIRUS CHECK</u>

Kevin L. Hall, Esquire, certifies as follows:

1. I caused the electronic version of this Reply Brief to be checked for computer viruses using Barracuda virus scan software. No computer virus was found.

2. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.


/s/ Kevin L. Hall
Dated:  June 12, 2017                    Kevin L. Hall

14

**CERTIFICATE OF SERVICE**

I, Kevin L. Hall, hereby certify that on this date, I electronically filed the foregoing Appellant's Reply Brief with the Clerk of the Court for the United States Court of Appeals for the Third Circuit. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by CM/ECF and via first class mail to the following address:

> J. Justin Blewitt, Jr.
> Assistant U.S. Attorney
> Joanne M. Hoffman
> Special Assistant U.S. Attorney
> 228 Walnut Street, 2nd Floor
> PO Box 11754
> Harrisburg, Pa 17108
> Phone: 717-221-4482
> Fax: 717-221-2246
> Justin.blewitt@usdoj.gov

**TUCKER ARENSBERG, P.C.**

Dated: June 12, 2017          By /s/ Kevin L. Hall
                                 Stephen M. Greecher, Jr., I.D. #36803
                                 Kevin L. Hall, I.D. #311826
                                 2 Lemoyne Dr., Ste. 200
                                 Lemoyne, PA 17043
                                 Telephone: (717) 234-4121
                                 Facsimile: (717) 232-6802
                                 sgreecher@tuckerlaw.com
                                 khall@tuckerlaw.com
                                 *Attorneys for Appellant*